UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SANTANDER CONSUMER USA, INC., CCAP AUTO LEASE, LTD.,<br><br>*Plaintiffs,*<br><br>– against –<br><br>THE COUNTY OF SUFFOLK, MARC LINDEMAN, LELAND SOLAN,<br><br>*Defendants.* | **MEMORANDUM & ORDER**<br>23-cv-05308 (NCM) (ST) |

**NATASHA C. MERLE**, United States District Judge:

Plaintiffs Santander Consumer USA, Inc. ("Santander") and CCAP Auto Lease, Ltd. ("CCAP") are automobile lending and leasing companies. Plaintiffs' Rule 56.1 Statement ¶¶ 1–2; Defendants' Rule 56.1 Counterstatement ¶¶ 1–2.[1] They bring suit against defendants The County of Suffolk ("Suffolk" or "the County"), Assistant County Attorney Leland Solon, and Deputy County Attorney Marc Lindemann concerning defendants' conduct regarding two automobiles seized from intoxicated drivers in which plaintiffs have an ownership or financial interest. *See generally* Compl.; *see also* Pls' 56.1 ¶ 46; Defs' 56.1

---

[1]     The Court hereinafter refers to plaintiffs' Complaint, ECF No. 1, as the "Complaint"; defendants' Answer to Complaint with Counterclaims, ECF No. 35, as the "Answer"; plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment, ECF No. 67, as "Plaintiffs' Motion"; defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment, ECF No. 69, as "Defendants' Motion"; plaintiffs' Combined Reply in Support of its Motion for Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment, ECF No. 70, as "Plaintiffs' Reply"; defendants' Reply Memorandum of Law, ECF No. 71 as "Defendants' Reply"; plaintiffs' Rule 56.1 Statement, ECF No. 67-1, as "Plaintiffs' 56.1"; defendants' Rule 56.1 Statement, ECF No. 69-8, as "Defendants' 56.1"; plaintiff's Rule 56.1 Counterstatement, ECF No. 70-1, as "Plaintiffs' 56.1 Counter"; and defendants' Rule 56.1 Counterstatement, ECF No. 69-1, as "Defendants' 56.1 Counter."

Counter ¶ 46. Suffolk brings counterclaims against plaintiffs, alleging that plaintiffs owe Suffolk towing and storage fees for the automobiles. *See* Answer ¶¶ 102–16. Before the Court are the parties' cross-motions for summary judgment. *See* Pls' Mot.; Defs' Mot. For the reasons stated below, with respect to plaintiff's claims, plaintiffs' motion for summary judgment is **DENIED** and defendants' cross-motion for summary judgment is **GRANTED**. With respect to Suffolk's counterclaims, the parties' motions are held in abeyance pending resolution of the Court's subject-matter jurisdiction.

## BACKGROUND

When an individual is arrested for driving while intoxicated ("DWI") in Suffolk County, the Suffolk County Code ("S.C. Code" or "the Code") authorizes the County to seize the driver's vehicle as an instrumentality of a crime and subsequently seek civil forfeiture of the seized automobile. *See* S.C. Code §§ 420-5 to -10, 818-13 to -20. The Code specifies that upon such a seizure, the "seizing agency shall send notification of the seizure to all titled owners [and] registrants . . . within five business days of the seizure." S.C. Code § 420-6(B)(1).[2] The notification must "inform the recipient that there will be a hearing promptly scheduled before a neutral magistrate to determine," among other things, "whether the County is likely to succeed on the merits of [a] forfeiture action," "whether retention is necessary to preserve the vehicle from destruction or sale during the pendency of the forfeiture proceeding," and "whether any other measures would better protect the County's interest during the proceedings" such as issuing a restraining order prohibiting sale or transfer, taking a bond, or using an ignition interlock device. *Id*. The Code also specifies that "[w]hen a hearing is held, the neutral magistrate shall review . . . relevant

---

[2]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

documents and take any testimony to determine whether the seizing agency has sustained its burden of proof." *Id.* § 420-6(B)(2). If so, "the neutral magistrate shall authorize the continued retention of the property by the seizing agency pending a judicial determination of any civil forfeiture action." *Id.* These hearings are commonly referred to as *Krimstock* hearings, named after a Second Circuit case regarding due process rights in seized automobiles, *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002). *See* Pls' Mot. 12; Defs' Mot. 8.[3] The Code specifies that Suffolk cannot retain a seized vehicle indefinitely in a pre-forfeiture posture. Rather, "[a]ny action for forfeiture . . . shall be commenced, in the manner prescribed by New York Civil Practice Law and Rules § 304, within 180 days after the seizure. Failure to commence such an action with[in] 180 days after the seizure shall result in the immediate return of the property to its lawful owner." S.C. Code § 420-6(C). Furthermore, the Code specifies that "[a]ll property seized pursuant to this article is subject to reasonable and customary towing, maintenance and daily storage fees" which "shall be payable to the seizing agent prior to the release of said property." *Id.* § 420-7(L). Currently, the "towing and storage fees assessed by the County" encompass "a flat $250 towing fee and a storage fee of $30 per business day." Defs' 56.1 ¶ 44; Pls' 56.1 Counter ¶ 44.

The present dispute centers on two automobiles—a RAM truck (the "RAM") and a Dodge SUV (the "Dodge")—that were seized in 2022 and 2023 under this statutory scheme. Pls' 56.1 ¶¶ 6, 25, 43; Defs' 56.1 Counter ¶¶ 6, 25, 43. The facts related to each vehicle are discussed below.

---

[3]     Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

I.       Plaintiff CCAP and the Dodge SUV

Plaintiff CCAP is an automotive finance company that takes assignment of automobile lease contracts and holds title in the leased vehicles. Pls' 56.1 ¶ 2; Defs' 56.1 Counter ¶ 2. In 2020, a non-party (the "Dodge Customer") leased the Dodge from a dealership under a three-year lease agreement. Pls' 56.1 ¶ 15; Defs' 56.1 Counter ¶ 15. The dealership assigned the lease agreement to CCAP, which "obtained a perfected security interest and lien in the [Dodge]." Pls' 56.1 ¶¶ 16–17; Defs' 56.1 Counter ¶¶ 16–17. A few weeks later, "CCAP perfected its lien when the New York State Department of Motor Vehicles issued a Certificate of Title listing CCAP as the owner of the [Dodge]." Pls' 56.1 ¶ 18; Defs' 56.1 Counter ¶ 18.

On August 20, 2022, the Dodge was seized and towed by the Police Department of the Village of Quogue incidental to the arrest of the driver for DWI. Pls' 56.1 ¶ 25; Defs' 56.1 Counter ¶ 25. The Dodge was then put into Suffolk's DWI forfeiture program. Pls' 56.1 ¶ 27; Defs' 56.1 Counter ¶ 27. A *Krimstock* hearing regarding the Dodge was scheduled for September 1, 2022. Pls' 56.1 ¶ 28; Defs' 56.1 Counter ¶ 28. Suffolk assigned Assistant County Attorney Dylan Vincent Reid to represent Suffolk's interest at the hearing. Pls' 56.1 ¶ 28; Defs' 56.1 Counter ¶ 28. The Village of Quogue sent notice to all interested parties, including CCAP, that the vehicle had been seized and that a *Krimstock* hearing was scheduled for September 1, 2022. Defs' 56.1 ¶ 28; Pls' 56.1 Counter ¶ 28. Plaintiffs allege that CCAP did not receive this notice until September 2, 2022, the day after the scheduled

4

hearing. Pls' 56.1 Counter ¶ 28. Receiving this letter was the first time CCAP learned of the seizure and impoundment. Pls' 56.1 ¶ 33; Defs' 56.1 Counter ¶ 33.[4]

On September 1, 2022, prior to the scheduled hearing, Suffolk agreed to accept the Dodge Customer's relinquishment of her interest in the Dodge in lieu of pursuing judicial forfeiture. Pls' 56.1 ¶ 29; Defs' 56.1 Counter ¶ 29. The parties dispute (or differently characterize) what happened next. Complicating matters further, defendants' two Rule 56.1 filings assert seemingly contradictory statements regarding what happened.

The Court begins with the plaintiffs' version. According to plaintiffs, after the customer signed the relinquishment stipulation prior to the hearing, Suffolk consequently "canceled the *Krimstock* hearing." Pls' 56.1 ¶ 30 (emphasis added). Plaintiffs "[d]eny . . . that the *Krimstock* hearing was held." Pls' 56.1 Counter ¶ 29. Plaintiffs also deny the assertion that "CCAP did not appear at the *Krimstock* hearing," because, plaintiffs insist, "the *Krimstock* hearing never happened, and so there was no hearing at which CCAP could appear." Pls' 56.1 Counter ¶ 30.

Defendants offer a different description (or descriptions) of what transpired. In defendants' 56.1 statement, defendants allege that "[o]n September 1, 2022, the *Krimstock* hearing on the [Dodge] was held." Defs' 56.1 ¶ 29. But in defendants' 56.1 counterstatement, defendants "admit that a hearing *was not held*." Defs' 56.1 Counter ¶ 30 (emphasis added). Defendants' counterstatement goes on to explain that the absence of a hearing was not "because the *Krimstock* hearing was cancelled." Defs' 56.1 Counter ¶ 30.

---

4    Defendants state that they "deny knowledge or information sufficient to form a belief as to when CCAP initially learned of the seizure." Defs' 56.1 Counter ¶ 33. The Court deems plaintiffs' statement of this fact to accordingly be admitted. *See Scarpinato v. 1770 Inn, LLC*, No. 13-cv-00955, 2015 WL 4751656, at *2 n.3 (E.D.N.Y. Aug. 11, 2015) ("[A]ny . . . Rule 56.1 statements that are not specifically controverted are deemed admitted.").

Rather, defendants assert, the absence of a hearing was because "the County reached an agreement with the lessee and CCAP defaulted by failing to appear." Defs' 56.1 Counter ¶ 30.

The parties also differently characterize what would have happened had a *Krimstock* hearing occurred and CCAP been present. Defendants suggest that CCAP could have "challenge[d] the validity of the seizure or the Village of Quogue's continued retention of the vehicle." Defs' 56.1 ¶ 30. Plaintiffs assert that "the validity of the . . . continued retention of the [Dodge] from CCAP . . . is not an issue that is addressed at a *Krimstock* hearing." Pls' 56.1 Counter ¶ 30. Plaintiffs cite deposition testimony given by Solon, which they characterize as "explaining that, since lessors 'never appear at the *Krimstock* Hearing,' none of the conditions imposed on a lessor for release of the vehicle are presented at the *Krimstock* hearing." Pls' 56.1 Counter ¶ 30 (emphasis added).[5]

On September 2, 2022, the County sent a letter to the Quogue Police Department stating that the Dodge was awaiting release to the lessee or their authorized agent. Defs' 56.1 ¶ 31; Pls' 56.1 Counter ¶ 31. Defendants allege that the County sent the letter "erroneously." Defs' 56.1 ¶ 31. Plaintiffs object to this characterization, arguing that defendants have cited no evidence for the proposition that the letter was sent in error. Pls' 56.1 Counter ¶ 31.

On September 19, 2022, the Dodge was transferred from the Quogue impound to the Suffolk County Police Department impound. Defs' 56.1 ¶ 32; Pls' 56.1 Counter ¶ 32.

---

[5]     Plaintiffs cite pages 42 and 43 of Solon's deposition transcript. Pls' 56.1 Counter ¶ 30. Although some excerpts of the transcript have been filed with the Court, *see* ECF Nos. 67-22, 69-3, 69-14, neither party has seemingly filed these particular pages.

Suffolk took no action to contact CCAP regarding the Dodge between September 2022 and April 2023, when Suffolk contacted CCAP's attorney. Pls' 56.1 ¶¶ 34–35; Defs' 56.1 Counter ¶¶ 34–35. Suffolk provided CCAP's attorney with a proposed agreement for return of the vehicle. Defs' 56.1 ¶ 34; Pls' 56.1 Counter ¶ 34. Its contents included: (1) that CCAP cannot return the Dodge to the Dodge Customer; (2) that CCAP must indemnify, release, and hold Suffolk harmless; and (3) that CCAP must ensure payment of towing and storage fees. Pls' 56.1 ¶¶ 36–37; Defs' 56.1 Counter ¶¶ 36–37.

The parties differently characterize the proposed agreement. Plaintiffs characterize it as "provid[ing] a list of conditions for CCAP to satisfy in exchange for Suffolk's release of the [Dodge] to CCAP." Pls' 56.1 ¶ 35. Plaintiffs also characterize these items as "demands." Pls' 56.1 ¶¶ 35–36. Defendants deny that the items were either "conditions for CCAP to satisfy" or "demands." Defs' 56.1 Counter ¶¶ 35–36. Defendants assert, rather, that the items were instead "negotiable terms of a proposed settlement agreement." Defs' 56.1 Counter ¶¶ 35–36. Defendants also state that the "terms were common" and that "terms" like these were "negotiated on a case-by-case basis." Defs' 56.1 Counter ¶¶ 35–36.

On June 21, 2023, CCAP's attorney informed the County that CCAP had rejected the County's proposal and demanded the unconditional release of the Dodge. Defs' 56.1 ¶ 37; Pls' 56.1 Counter ¶ 37; Pls' 56.1 ¶ 38; Defs' 56.1 Counter ¶ 38. The instant litigation ensued. *See* Compl.

The parties agree that, to date, Suffolk has not commenced a forfeiture proceeding against the Dodge. Pls' 56.1 ¶ 31; Defs' 56.1 Counter ¶ 31. However, the parties characterize the absence of the commencement of a forfeiture proceeding differently. Plaintiffs assert that "[b]ased upon the [Dodge] Customer's relinquishment of her interest in the [Dodge], Suffolk discontinued its effort to obtain judicial forfeiture." Pls' 56.1 ¶ 31. Meanwhile,

defendants assert that they merely "sought to negotiate an agreement with [plaintiff CCAP] before seeking to commence a forfeiture proceeding." Defs' 56.1 Counter ¶ 31.

The parties agree that Suffolk at no point obtained a warrant or other Court order regarding the Dodge. Pls' 56.1 ¶ 39; Defs' 56.1 Counter ¶ 39. According to plaintiffs, "Suffolk did not arrange for a hearing before a neutral decision maker relating to the propriety of Suffolk's continued impoundment of the [Dodge] or the propriety of the conditions Suffolk placed on release of the [Dodge] to CCAP." Pls' 56.1 ¶ 41. Defendants "[d]eny that there was no hearing as to the continued impoundment of the [Dodge] where the County was present at the *Krimstock* hearing and CCAP defaulted by failing to appear," but "[a]dmit that the County did not arrange for a separate hearing before a neutral decision maker on the proposed terms of the . . . agreement [with CCAP] for the [Dodge]." Defs' 56.1 Counter ¶ 41.

Finally, the parties agree that Dodge Customer is in default on the customer's lease agreement, Pls' 56.1 ¶ 20; Defs' 56.1 Counter ¶ 20, but the parties disagree about the ramifications of that fact. The text of the lease agreement states that "[i]f you are in default Lessor may . . . [t]ake the Vehicle from you without demand." Lease Agreement § 26(B), ECF No. 67-6; *see also* Pls' 56.1 ¶ 21. Plaintiffs assert that "CCAP was thus entitled to possession of the [Dodge]," Pls' 56.1 ¶ 21, while defendants deny this assertion on the basis that Suffolk "is not a party to the lease agreement" and that the assertion is "a legal conclusion." Defs' 56.1 Counter ¶ 21.[6]

---

[6] The Court notes that the Dodge Customer brought a separate lawsuit against defendants, asserting "(1) violation of her Fourth Amendment rights pursuant to 42 U.S.C. § 1983 based on the County's retention of the [Dodge] post-seizure without a warrant; (2) violation of her Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 based on the County's post-seizure retention of the [Dodge] without a hearing; and (3) breach of

## II.     Plaintiff Santander and the RAM Truck

Plaintiff Santander is an automotive finance company that takes assignment of automobile installment contracts and holds liens in vehicles to secure payment under those contracts. Pls' 56.1 ¶ 1; Defs' 56.1 Counter ¶ 1. In 2021, a non-party (the "RAM Customer") purchased the RAM from a dealership under a six-year retail installment contract. Pls' 56.1 ¶ 7; Defs' 56.1 Counter ¶ 7. The dealership assigned the contract to Santander, which "obtained a perfected security interest and lien in the RAM." Pls' 56.1 ¶¶ 8–9; Defs' 56.1 Counter ¶¶ 8–9. A few days later, "Santander perfected its lien by virtue of the issuance of a title to the RAM Customer reflecting Santander's lien." Pls' 56.1 ¶ 10; Defs' 56.1 Counter ¶ 10.

On March 18, 2023, the RAM was seized, towed, and impounded by Suffolk incidental to the arrest of the RAM Customer for DWI. Pls' 56.1 ¶ 43; Defs' 56.1 Counter ¶ 43. Suffolk then subjected the RAM to the County's DWI forfeiture program. Pls' 56.1 ¶ 45; Defs' 56.1 Counter ¶ 45. A *Krimstock* hearing regarding the RAM was scheduled for April 6, 2023. Pls' 56.1 ¶ 46; Defs' 56.1 Counter ¶ 46. The County served notice to all interested parties, including Santander, that a *Krimstock* hearing before a neutral magistrate was scheduled for that date. Defs' 56.1 ¶ 17; Pls' 56.1 Counter ¶ 17. Santander initially learned of the impoundment of the RAM on April 5, 2023, when it received a letter from Suffolk. Pls' 56.1 ¶ 50; Defs' 56.1 Counter ¶ 50.[7]

---

contract based on the County's failure to return the [Dodge] to CCAP in violation of a release agreement into which she entered with the County." *Burnett v. County of Suffolk*, No. 23-cv-07521, 2025 WL 2783281, at *1 (E.D.N.Y. Sept. 30, 2025). The Court "dismiss[ed] plaintiff's § 1983 claims for failure to state a claim and declin[ed] to exercise supplemental jurisdiction over plaintiff's breach of contract claim." *Id.*

[7]     Paragraph 50 of defendants' Rule 56.1 counterstatement refers to "CCAP" rather than "Santander," but the Court assumes that this is a typographical error. Defs' 56.1 Counter ¶ 50.

Suffolk assigned defendant Solon to represent Suffolk's interest at the hearing. Pls' 56.1 ¶ 46; Defs' 56.1 Counter ¶ 46. At the request of the RAM Customer's attorney, the *Krimstock* hearing was adjourned to April 20, 2023 to allow the RAM Customer to turn over title to the RAM to Suffolk. Pls' 56.1 ¶ 47; Defs' 56.1 Counter ¶ 47. Plaintiffs assert that Suffolk "took no action to inform Santander regarding the date of the rescheduled *Krimstock* hearing." Pls' 56.1 Counter ¶ 17. The customer turned over title to the RAM to the County on April 19, 2023. Pls' 56.1 ¶ 47; Defs' 56.1 Counter ¶ 47; Defs' 56.1 ¶ 19; Pls' 56.1 Counter ¶ 19.

The parties differently characterize what happened next. According to plaintiffs, once the RAM Customer surrendered title to the RAM to the County, Suffolk "canceled the *Krimstock* hearing." Pls' 56.1 ¶ 48 (emphasis added); *see also* Pls' 56.1 Counter ¶ 20. Defendants deny this and instead assert that "[t]he County was present at the *Krimstock* hearing on the noticed date, and Santander defaulted by failing to appear." Defs' 56.1 Counter ¶ 48. Plaintiffs "[a]dmit that Santander did not appear at the *Krimstock* hearing, but deny that there was any hearing at which Santander could appear at all, because," in the plaintiffs' view, "the County . . . canceled the *Krimstock* hearing as soon as [the RAM Customer] surrendered title to the RAM to the County." Pls' 56.1 Counter ¶ 20.

The parties also differently characterize what would have happened had a *Krimstock* hearing occurred and Santander been present. Defendants suggest that Santander could have "challenge[d] the validity of the seizure [or] the County's continued retention of the vehicle." Defs' 56.1 ¶ 20. Plaintiffs assert that "the validity of the County's continued retention of the RAM . . . is not an issue that is addressed at a *Krimstock* hearing." Pls' 56.1 Counter ¶ 20. Plaintiffs again cite deposition testimony given by Solon, which they characterize as "explaining that, since lessors 'never appear at the *Krimstock*

Hearing,' none of the conditions imposed on a lessor for release of the vehicle are presented at the *Krimstock* hearing." Pls' 56.1 Counter ¶ 20.

Between April 6, 2023 and May 3, 2023, Suffolk took no action to communicate with Santander regarding the RAM. Pls' 56.1 ¶ 51; Defs' 56.1 Counter ¶ 51. On May 3, 2023, Santander's attorney sent a fax to Suffolk asserting Santander's right to possess the RAM and requesting release of the vehicle and cessation of storage fees. Pls' 56.1 ¶ 52; Defs' 56.1 Counter ¶ 52; Defs' 56.1 ¶ 21; Pls' 56.1 Counter ¶ 21. In response, Suffolk sent a proposed agreement to Santander's attorney. Pls' 56.1 ¶ 53; Defs' 56.1 Counter ¶ 53; Defs' 56.1 ¶ 22; Pls' 56.1 Counter ¶ 22. Its contents included: (1) that Santander cannot return the RAM to the RAM Customer; (2) that Santander must indemnify, release, and hold Suffolk harmless; and (3) that Santander must ensure payment of towing and storage fees. Pls' 56.1 ¶¶ 54–55; Defs' 56.1 Counter ¶¶ 54–55.

The parties differently characterize the proposed agreement. Plaintiffs characterize it as "provid[ing] a list of conditions for Santander to satisfy in exchange for Suffolk's release of the RAM Vehicle to Santander." Pls' 56.1 ¶ 53. Plaintiffs also characterize these items as "demands." Pls' 56.1 ¶ 54. Defendants deny that the items were either "conditions for Santander to satisfy" or "demands" and assert that they were instead "negotiable terms." Defs' 56.1 Counter ¶¶ 53–54. Defendants also state that the "terms were common" and that "terms" like these were "negotiated on a case-by-case basis." Defs' 56.1 Counter ¶¶ 53–54.

On June 21, 2023, Santander's attorney informed the County that Santander had rejected the County's proposal and demanded the unconditional release of the RAM. Defs' 56.1 ¶ 24; Pls' 56.1 Counter ¶ 24; Pls' 56.1 ¶ 56; Defs' 56.1 Counter ¶ 56. The instant litigation ensued. *See* Compl.

11

The parties agree that to date, Suffolk has not commenced a forfeiture proceeding against the RAM. Pls' 56.1 ¶ 49; Defs' 56.1 Counter ¶ 49. However, the parties characterize the absence of the commencement of a forfeiture proceeding differently. Plaintiffs assert that "[b]ased upon the RAM Customer's relinquishment of his interest in the RAM Vehicle, Suffolk discontinued its effort to obtain judicial forfeiture of the [RAM]." Pls' 56.1 ¶ 49.[8] Meanwhile, defendants assert that they merely "sought to negotiate an agreement with [Santander] before seeking to commence a forfeiture proceeding." Defs' 56.1 Counter ¶ 49.

The parties agree that Suffolk at no point obtained a warrant or other Court order regarding the RAM. Pls' 56.1 ¶ 57; Defs' 56.1 Counter ¶ 57. According to plaintiffs, "Suffolk did not arrange for a hearing before a neutral decision maker relating to the propriety of Suffolk's continued impoundment of the RAM Vehicle or the propriety of the conditions Suffolk placed on release of the RAM Vehicle to Santander." Pls' 56.1 ¶ 59. Defendants "[d]eny that there was no hearing as to the continued impoundment of the RAM where the County was present at the *Krimstock* hearing and Santander defaulted by failing to appear," but "[a]dmit that the County did not arrange for a separate hearing before a neutral decision maker on the proposed terms of the . . . agreement [with Santander] for the RAM." Defs' 56.1 Counter ¶ 59.

Finally, the parties agree that the RAM customer is in default on his auto loan contract, Pls' 56.1 ¶ 12; Defs' 56.1 Counter ¶ 12, but disagree about the ramifications of that fact. The text of the installment contract states that "[i]f you default, [Santander] may take (repossess) the vehicle from you." Retail Installment Contract 4, ECF No. 67-3. Plaintiffs assert that "Santander was thus entitled to possession of the RAM Vehicle." Pls' 56.1 ¶ 13.

---

[8]    Paragraph 49 of plaintiff's Rule 56.1 statement refers to "the [Dodge]" rather than "the RAM," but the Court assumes that this is a typographical error. Pls' 56.1 ¶ 49.

Defendants deny this assertion, stating that "Santander did not have a right to immediate possession of the RAM, as the retail installment contract, to which the County is not a party, only allows it to retake possession from the customer under certain circumstances. This statement is also a legal conclusion." Defs' 56.1 Counter ¶ 13.

III.    Suffolk's Policies with Respect to Vehicle Seizure and Impoundment

The parties agree that Suffolk "followed its standard policies, customs and practices when it . . . impounded the RAM." Pls' 56.1 ¶ 60; Defs' 56.1 Counter ¶ 60. Plaintiffs allege that Suffolk did the same with respect to the Dodge, and defendants mostly agree except with respect to the fact that Suffolk did not communicate with CCAP between September 2022 and March 2023. Pls' 56.1 ¶ 42; Defs' 56.1 Counter ¶ 42. Defendants assert that "this six-month gap in communication" was due to "an administrative error" where the Dodge was incorrectly marked in defendants' records as "awaiting release to the lessee or their authorized agent" even though in fact there had "been no contact from CCAP or agreement executed regarding the [Dodge]'s return." Defs' 56.1 Counter ¶ 42.

The parties agree that, in general, when "the lessee of a leased vehicle or the owner of a vehicle subject to a lien surrenders their interest in a seized vehicle to the County, the County will contact the lessor or lienholder to determine whether they wish to retrieve the vehicle and, if so, negotiate the terms of release." Defs' 56.1 ¶ 11; Pls' 56.1 Counter ¶ 11. The County will also "[d]iscontinue all efforts to seek judicial forfeiture of the vehicle." Pls' 56.1 ¶ 63; Defs' 56.1 Counter ¶ 63. When negotiating the details of the vehicle's release, "the County typically prepares a form agreement with proposed terms for the vehicle's release, which is then modified during negotiations between the parties." Defs' 56.1 ¶ 12; Pls' 56.1 Counter ¶ 12.

Plaintiffs allege that the County will then "[d]etain the vehicle from the lienholder or leasing company until the lienholder or lessor agrees to conditions for release of the vehicle demanded by Suffolk" and "[i]f the lienholder or leasing company will not agree to Suffolk's conditions . . . , Suffolk continues to detain the vehicle . . . with no form of hearing afforded at any time." Pls' 56.1 ¶ 63. Defendants deny that Suffolk does either of these things. Defs' 56.1 Counter ¶ 63.

The parties also have further disagreement about Suffolk's approach when a lending company and the County reach an impasse about the disposition of a seized vehicle that the driver has relinquished their interest in. Pls' 56.1 ¶ 64; Defs' 56.1 Counter ¶ 64. Plaintiffs assert that Suffolk "has no policy for affording a lienholder or leasing company any opportunity for a hearing when its relinquishment of interest detention results in an impasse with a lienholder or lessor." Pls' 56.1 ¶ 64. Defendants disagree, stating that Suffolk's "policy is to negotiate with the lessor or lienholder until an agreement on a vehicle's return can be reached." Defs' 56.1 Counter ¶ 64.

IV.    The Instant Lawsuit

On July 12, 2023, still unable to repossess the vehicles, plaintiffs filed the instant lawsuit. *See* Compl.; Pls' 56.1 ¶ 75; Defs' 56.1 Counter ¶ 75. The complaint raises three counts under 42 U.S.C. § 1983: (1) deprivation of property by unreasonable seizure in violation of the Fourth Amendment; (2) deprivation of property without due process of law in violation of the Fourteenth Amendment; and (3) taking of property without just compensation in violation of the Fifth Amendment. Compl. ¶¶ 51–80. Defendant Suffolk filed counterclaims against plaintiffs, alleging that plaintiffs owe Suffolk approximately $8,070 in storage fees for the Dodge and $5,100 in towing and storage fees for the RAM. Answer ¶ 102.

About three months after plaintiffs filed suit, Suffolk agreed to permit CCAP to retrieve the Dodge pending the instant litigation. Pls' 56.1 ¶ 77; Defs' 56.1 Counter ¶ 77. On October 23, 2023, CCAP retrieved the vehicle. Pls' 56.1 ¶ 77; Defs' 56.1 Counter ¶ 77. To date, Santander is unable to retrieve the RAM from the County. Pls' 56.1 ¶ 81; Defs' 56.1 Counter ¶ 81.

**STANDARD OF REVIEW**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021). Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

The movant "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). Where the moving party meets their burden, the nonmoving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). The court need only consider admissible evidence and is not obligated to conduct an independent review of the record to identify a factual dispute. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021) (citing *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)).

When both parties submit a motion for summary judgment, "the court evaluates each party's motion on its own merits, and all reasonable inferences are drawn against the

15

party whose motion is under consideration." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023). A district court's role is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). Furthermore, "a district court may not make credibility determinations, or weigh evidence" on summary judgment. *Reynolds v. Quiros*, 990 F.3d 286, 294 (2d Cir. 2021). Thus, a district court denies summary judgment where there are disputed facts "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019).

## DISCUSSION

Section 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any person within the [United States] to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. To state a claim against a municipality under Section 1983, a plaintiff must satisfy the "well-settled requirements of *Monell*." *Martin v. County of Nassau*, 692 F. Supp. 2d 282, 296 (E.D.N.Y. 2010) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Under *Monell*, a plaintiff must plausibly allege three elements: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). "[A]n underlying constitutional violation is a prerequisite to municipal liability under *Monell*." *Walker v. City of New York*, No. 24-cv-00330, 2024 WL 1679331, at *2 (E.D.N.Y. Apr. 18, 2024).

16

With respect to defendants Solon and Lindeman, a "plaintiff may sue a municipal officer under 42 U.S.C. § 1983 in both his official and individual capacities." *Cass v. County of Suffolk*, No. 01-cv-03348, 2005 WL 1115472, at \*3 (E.D.N.Y. May 11, 2005). To establish Section 1983 liability of an officer in their individual capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Section 1983 claims against municipal employees sued in their official capacity, by contrast, are treated as claims against the municipality itself. *Ortiz v. Wagstaff*, 523 F. Supp. 3d 347, 361 (W.D.N.Y. 2021). "Therefore, in order to assert a viable claim against a municipal employee in his official capacity, the plaintiff must have a viable *Monell* claim against the municipality." *Id.* (quoting *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 671 (D. Conn. 2008)).

Plaintiffs' complaint does not specify whether the individual defendants are sued in their individual or official capacities, *see* Compl., but the Court presumes so that plaintiff intended to sue defendants in both. *See Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) ("[A] plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other."); *Mobayed v. Pastina*, No. 94-cv-06386, 1996 WL 741744, at \*3 (S.D.N.Y. Dec. 27, 1996) ("While plaintiff's papers are silent as to whether he sues defendants in their personal or official capacities, the Court assumes that he does both.").

Plaintiffs' complaint raises three counts under 42 U.S.C. § 1983 against the County and individual defendants, alleging: (1) deprivation of property by unreasonable seizure in violation of the Fourth Amendment, Compl. ¶¶ 51–60; (2) deprivation of property without due process of law in violation of the Fourteenth Amendment, Compl. ¶¶ 61–71; and (3)

17

taking of property without just compensation in violation of the Fifth Amendment, Compl. ¶¶ 72–80. The Court addresses each in turn.

I.    <u>Fourth Amendment</u>

Count I of plaintiffs' complaint alleges that defendants have seized and unreasonably detained the RAM and Dodge in violation of the Fourth Amendment. Compl. ¶¶ 51–60. The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Plaintiffs allege that defendants "seize[d] the RAM and [Dodge] within the meaning of the Fourth Amendment" and that when Suffolk "decided not to seek judicial forfeiture, its continued *ex parte* detention of the RAM and [Dodge] became unreasonable" in violation of the Fourth Amendment. Compl. ¶¶ 54–57.

The Court finds that plaintiffs' Fourth Amendment claim fails as a matter of law because plaintiffs challenge only Suffolk's post-seizure retention of the vehicles but concede that the initial seizures were constitutional. *See* Pls' Reply 25 (conceding that "Suffolk's acts in seizing and detaining the vehicles pending Suffolk filing an action for judicial forfeiture did not violate the Fourth Amendment"). The Second Circuit Court of Appeals has explicitly held that if "an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure." *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004). Rather, "a seizure claim based on . . . unlawful retention [is] too novel a theory to warrant Fourth Amendment protection." *Id.* (citing *United States v. Jakobetz*, 955 F.2d 786, 802 (2d Cir. 1992)). In a summary order, the Second Circuit further stated that the Fourth Amendment is not a viable basis for challenging the prolonged detention of property that was initially seized under lawful

circumstances, and "to the extent the Constitution affords any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process." *Bennett v. Dutchess County*, 832 F. App'x 58, 60 (2d Cir. 2020) (summary order) (quoting *Shaul*, 363 F.3d at 187).

Several district courts within the Second Circuit have recently cited *Shaul* to reject similar Fourth Amendment claims regarding retention of vehicles initially seized under lawful circumstances. *See Mercedes-Benz Fin. Servs. USA, LLC v. City of New York*, 770 F. Supp. 3d 643, 664 (S.D.N.Y. 2025); *Santander v. Port Auth. of N.Y. & N.J.*, 2023 WL 12028907, at *5–6 (E.D.N.Y. Dec. 4, 2023); *Santander v. City of Yonkers*, 2024 WL 4817649, at *7–8 (S.D.N.Y. Nov. 18, 2024); The Court reaches a similar conclusion in the instant case.

Accordingly, with respect to plaintiffs' Fourth Amendment claim, plaintiffs' motion for summary judgment is denied and defendants cross-motion for summary judgment is granted.

## II.    Fourteenth Amendment

Count II of plaintiffs' complaint alleges that defendants have deprived plaintiffs of their property interests in the RAM and Dodge without due process of law in violation of the Fourteenth Amendment. Compl. ¶¶ 61–71. The Due Process Clause of the Fourteenth Amendment specifies that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. When a court evaluates a claim that a state's procedures for the deprivation of property violate the Due Process Clause, the court must "consider two distinct issues: 1) whether plaintiffs possess a . . . property interest protected by the Due Process Clause; and, if so, 2) whether existing state

19

procedures are constitutionally adequate." *Ford Motor Credit Co. v. NYPD*, 503 F.3d 186, 190 (2d Cir. 2007) (quoting *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005)).

For procedures to be constitutionally adequate, generally "individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993); *see also TD Auto Fin. LLC v. County of Putnam*, No. 21-cv-09080, 2023 WL 6295116, at *7 (S.D.N.Y. Sep. 27, 2023). "Due process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as some form of hearing is provided before an individual is finally deprived of the property interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (quoting *Brody v. Village of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005)). "In other words, due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Brody*, 434 F.3d at 134).

The government's seizure and retention of automobiles under civil forfeiture statutes has been the subject of extensive Due Process Clause litigation. The Supreme Court has held that when a property owner will receive a forfeiture proceeding that is suitably timely, that "satisfies any due process right with respect to the car." *United States v. Von Neumann*, 474 U.S. 242, 251 (1986). Two decades ago, in *Krimstock v. Kelly*, the Second Circuit held that—in addition to the forfeiture proceeding itself—when a local government seizes a vehicle without a warrant and retains possession of the vehicle prior to the conclusion of a forfeiture action, due process requires that the government provide a prompt, post-seizure, pre-judgment hearing to test the probable validity of continued deprivation of the vehicle and determine whether the government is likely to succeed on merits of a forfeiture action. 306 F.3d at 67–68. In 2024, in *Culley v. Marshall*, the U.S. Supreme Court abrogated *Krimstock*, clarifying that with respect to

20

seized automobiles, due process requires a timely forfeiture hearing but does not require separate preliminary hearing. *Culley v. Marshall*, 601 U.S. 377, 380 (2024); *see also Innamorato v. County of Suffolk*, No. 23-cv-06573, 2025 WL 2605604, at *4 n.5 (E.D.N.Y. Sept. 9, 2025) (noting *Culley*'s abrogation of *Krimstock*). Whether a forfeiture hearing occurs quickly enough to pass constitutional muster is a question to be determined based on the Supreme Court's decision in *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555 (1983). *Culley*, 601 U.S. at 387.

The Supreme Court's opinion in *$8,850* lays out the appropriate method for appraising the constitutionality of a delay between a seizure and a forfeiture hearing. The purpose of the inquiry is to permit appropriate delays but prohibit the circumstance where "a post-seizure delay may become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time." *$8,850*, 461 U.S. at 562–63. When courts conduct this inquiry, timeliness is to be "assessed by analogizing to a defendant's right to a speedy trial and considering four factors: the length of the delay, the reason for the delay, whether the property owner asserted his rights, and whether the delay was prejudicial." *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). In *$8,850*, the Supreme Court found that an "18-month delay in filing a civil proceeding for forfeiture" of seized property did not, under the circumstances, constitute an "unreasonable delay." *$8,850*, 461 U.S. at 556. Moreover, "Second Circuit cases subsequent to [*$8,850*] have allowed significant delays based on these [four] factors." *United States v. David*, 131 F.3d 55, 59 (2d Cir. 1997).

In the instant case, plaintiffs allege that Suffolk provides no "opportunity for neutral review" of continued detention of a seized vehicle "in situations where [Suffolk] decides not to seek judicial forfeiture." Compl. ¶ 64. Plaintiffs allege that they had no "opportunity

to be heard in relation to any of [d]efendants' actions in relation to the RAM and [Dodge] in any venue at any time." Compl. ¶ 65. They further allege that Suffolk "did not provide [p]laintiffs with constitutionally adequate notice of that nonexistent hearing procedure." Compl. ¶ 66. Plaintiffs argue that this conduct amounts to a deprivation of plaintiffs' rights without due process of law in violation of the Due Process Clause. *See* Compl. ¶ 68.

The Court begins its analysis by noting that there are two distinct notice and hearing procedures contemplated by the civil forfeiture regime at issue in this case. First, the Suffolk County Code specifies that upon the seizure of an automobile, the "seizing agency shall send notification . . . to all titled owners [and] registrants . . . within five business days of the seizure." S.C. Code § 420-6(B)(1). The notice must inform the recipient that the County will promptly hold a *Krimstock* hearing before a neutral magistrate. *Id.* Although *Culley* ruled that such hearings are not constitutionally required, Suffolk is permitted to offer more process than the constitutional minimum.

The second notice and hearing procedure contemplated by the Suffolk County Code is the forfeiture proceeding. The Code specifies that the County must either commence an "action for forfeiture . . . in the manner prescribed by New York Civil Practice Law and Rules § 304[] within 180 days after the seizure" or "return . . . the property to its lawful owner." *Id.* § 420-6(C). Section 304 of New York's Civil Practice Law and Rules specifies the procedures for commencing a civil action in New York State Court. *See* N.Y. C.P.L.R. § 304. Such a civil action entails both notice (via service of process), *see generally id.* §§ 306–316, and an inherent opportunity to be heard by the state court where the action proceeds.

The instant case concerns the seizure and impoundment of two vehicles: the RAM and the Dodge. The Court considers each in turn.

22

A.    Due Process with Respect to the Dodge

To evaluate plaintiffs' due process claim with respect to the Dodge, the Court must consider "whether plaintiffs possess a . . . property interest protected by the Due Process Clause" and, if so, whether the "procedures [were] constitutionally adequate." *Ford Motor Credit*, 503 F.3d at 190. Defendants do not dispute that plaintiff CCAP has a property interest in the Dodge protected by the Due Process Clause, so the principal inquiry is whether the procedures employed pass constitutional muster.

Under *$8,850*, the Court must consider four factors to evaluate the constitutionality of the period of time during which CCAP was deprived of its property and had not received a forfeiture hearing. The first factor is "the length of the delay." *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). The Dodge was seized on August 20, 2022 incident to the arrest of the driver for DWI. Pls' 56.1 ¶ 25; Defs' 56.1 Counter ¶ 25. The Dodge was physically turned over to CCAP on October 23, 2023. Pls' 56.1 ¶ 77; Defs' 56.1 Counter ¶ 77. In total, a period of fourteen months and three days elapsed between the seizure of the vehicle and Suffolk complying with the requirement to either hold a forfeiture hearing as contemplated by *Culley* or cease the deprivation of property. In *$8,850*, the Supreme Court found a period of eighteen months to be "quite significant" and "a substantial period of time" (though ultimately permissible under the circumstances). 461 U.S. at 565, 569. Accordingly, the Court finds that the "length of the delay" here of fourteen months weighs in plaintiffs' favor.

The second factor is the "reason for the delay." *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). The fourteen-month period consists of four phases: (1) the time between when the vehicle was seized in August 2022 and the date of the scheduled *Krimstock* hearing in September 2022; (2) the time between September 2022 and April

23

2023 when neither CCAP nor the County contacted each other; (3) the time between April 2023 and July 2023 when the County was attempting to have CCAP enter into an agreement; (4) the time between July 2023 and October 2023 when this litigation was ongoing and before the County had returned the vehicle.

With respect to the first phase, the Court finds this brief delay in advance of holding a *Krimstock* hearing to be an appropriate reason for delay. The reason for this portion of the overall delay thus weighs in favor of the County.

The second phase encompasses a period where neither CCAP nor the County attempted to contact each other about the vehicle and no material events transpired. Defendants allege that this portion of the delay stemmed from "an administrative error" where the vehicle was mistakenly marked in the County's records as awaiting release to the lessee even though in fact no arrangement had been set for the vehicle's disposition. Defs' 56.1 Counter ¶¶ 42, 61. Plaintiffs do not posit any alternative explanation for this period. *See generally* Pls' 56.1; Pls' 56.1 Counter. The Court finds that the County waiting to initiate a forfeiture proceeding due solely to an administrative error is a poor basis for the delay. Accordingly, the reason for this portion of the overall delay weighs in favor of plaintiffs. However, mitigating this somewhat is the fact that CCAP admits that it knew of the seizure since September 2, 2022, Pls' 56.1 ¶ 33; Defs' 56.1 Counter ¶ 33, yet made no effort to contact the County to attempt to retrieve its property during this entire period lasting approximately six months, Pls' 56.1 ¶¶ 34–35; Defs' 56.1 Counter ¶¶ 34–35.

With respect to the third phase, the parties do not dispute that Suffolk was attempting to have CCAP sign an agreement that would have resulted in the return of the vehicle. *See* Defs' 56.1 ¶ 34 ("Solon . . . sent a proposed lessor agreement to facilitate the return of the [Dodge] to CCAP"); Pls' 56.1 Counter ¶ 34 ("Plaintiffs admit Solon provided

24

[CCAP's attorney] with a proposed lessor agreement that would have led to CCAP's retrieval of the [Dodge], so long as CCAP agreed to certain conditions in that proposed lessor agreement."). The parties also agree that CCAP and the County engaged in communication about the terms of the proposed agreement (despite disagreement about whether the provisions were "demands" or "negotiable terms"). *See* Defs' 56.1 ¶ 36 ("[T]there were multiple emails exchanged negotiating the terms of the proposed lessor agreement."); Pls' 56.1 Counter ¶ 36 ("Plaintiffs admit [CCAP's attorney], on behalf of CCAP, was communicating with Solon and the County regarding the terms of the proposed lessor agreement . . . [though] object . . . to the extent [d]efendants attempt to characterize the communications . . . as negotiating."); *see also* Pls' 56.1 ¶ 36 (characterizing provisions as "demands"); Defs' 56.1 Counter ¶ 35 (characterizing provisions as "negotiable terms"). The Court accordingly finds it undisputed that one reason for the delay was the County's attempt to resolve the vehicle's status via an agreement with CCAP.

The Court finds that the County's attempt to resolve the vehicle's status via an agreement with CCAP is a reason for this phase of delay that weighs in favor of the County. As a starting point, judicial policy strongly favors the resolution of disputes through voluntary, consensual agreements. *See Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir. 2001) ("[I]t is axiomatic that the law encourages settlement of disputes."); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 997 (2d Cir. 1983) ("[C]ourts favor the policy of encouraging voluntary settlement of disputes."). More specifically, the Supreme Court has instructed that the *$8,850* test should be analyzed "by analogizing to a defendant's right to a speedy trial." *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). In the speedy trial context, delays resulting from plea negotiations—or even time during which a defendant is merely considering a unilateral plea offer—are routinely

25

considered appropriate reasons for delay. *See, e.g., United States v. Palmer*, No. 20-cr-00379, 2021 WL 1614837, at \*5 (S.D.N.Y. Apr. 26, 2021) ("Courts have long recognized that plea negotiations are a legitimate basis for an ends-of-justice continuance."); *Brown v. Conway*, No. 06-cv-05041, 2009 WL 7809913, at \*4 (S.D.N.Y. June 23, 2009) (finding delay "to give [defendant] time to consider a plea bargain" did not count in favor of Sixth and Fourteenth Amendment speedy trial claims), *report and recommendation adopted*, 2011 WL 1362125 (S.D.N.Y. Apr. 8, 2011); *United States v. Rizzuto*, 458 F. Supp. 3d 373, 377 (E.D.N.C. 2020) (noting that court granted ends-of-justice continuance because defendant would need "time to consider a plea offer").

Finally, with respect to the fourth phase of delay—between the commencement of the instant litigation in July 2023 and the return of the vehicle to CCAP in October 2023—the Court finds this three-month period of delay weighs in favor of the County. After being sued in federal court, it was reasonable for the County to maintain the status quo for a period in order to take stock of the situation and develop its legal strategy before engaging in further action with respect to the vehicle, such as returning the vehicle to CCAP or attempting to initiate a forfeiture proceeding in state court.

Overall, taking stock of the reason for each phase of the overall delay, the Court finds that the second factor of the *$8,850* test weighs in aggregate in favor of the County.

The third factor of the *$8,850* test is "whether the property owner asserted [their] rights." *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). The Court notes that only six months elapsed between when CCAP first communicated with the County in any respect regarding the Dodge and the time when the Dodge was returned to CCAP. Moreover, only four months elapsed between when CCAP clearly announced that it would not agree to the County's proposal and demanded unconditional release of the vehicle and

26

when the vehicle was returned. Specifically, the Dodge was seized on August 20, 2022. Pls' 56.1 ¶ 25; Defs' 56.1 Counter ¶ 25. The first time CCAP sent a communication to Suffolk regarding the Dodge was April 17, 2023. *See* Pls' 56.1 ¶ 35; Defs' 56.1 Counter ¶ 35; Declaration of Matthew DeLuca, Ex. O at 7, ECF No. 69-24. It was not until June 21, 2023 that CCAP "rejected the [County's] proposal and demanded the unconditional release of the [Dodge]," Defs' 56.1 ¶ 37; Pls' 56.1 Counter ¶ 37. The County returned the Dodge to CCAP on October 23, 2023. Pls' 56.1 ¶ 77; Defs' 56.1 Counter ¶ 77. Looking at these circumstances, the Court concludes that CCAP did in fact assert their rights, which weighs in CCAP's favor, but CCAP did not do so until a significant length of time had elapsed since the seizure. Moreover, CCAP had the vehicle returned to them between four and six months after asserting their rights. Overall, the Court concludes that the third factor weighs in CCAP's favor only modestly.

The fourth factor is "whether the delay was prejudicial." *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). The prejudice that this factor is primarily concerned with is "whether the delay has hampered the claimant in presenting a defense on the merits." *$8,850*, 461 U.S. at 569; *see also David*, 131 F.3d at 60 (finding no prejudice where claimant "points to no witnesses or evidence that have been lost as a result of the delay"). Plaintiffs have not identified any reason to believe that the passage of time made them less able to present a defense on the merits than they would have been on the day the Dodge was seized. Accordingly, the Court concludes that this factor does not weigh in favor of the plaintiffs.

Weighing the factors as a whole, the Court concludes that plaintiffs have not alleged a meritorious claim that the 14-month detention of the Dodge violated plaintiffs' due process rights.

Plaintiffs argue strenuously that defendants' actions should not be evaluated in terms of the length of a delay, but rather should be deemed an inherent due process violation because following a driver or customer's relinquishment, defendants will never seek forfeiture against the vehicle. *See, e.g.*, Pls' Reply 7–8. The Court does not agree with this analysis. Plaintiffs note that both parties agree that "[w]hen a person who is facing DWI prosecution and/or forfeiture due to a DWI event relinquishes their interest in a seized vehicle, Suffolk's policy is to . . . [d]iscontinue all efforts to seek judicial forfeiture of the vehicle." Pls' 56.1 ¶ 63; Defs' 56.1 Counter ¶ 63. However, one of defendants' other Rule 56.1 responses contextualizes what defendants mean by "discontinue." Specifically, in response to the assertion that, following the relinquishment, "Suffolk discontinued its effort to obtain judicial forfeiture," Suffolk admitted this assertion "to the extent that the County sought to negotiate an agreement with the lessor before seeking to commence a forfeiture proceeding." Defs' 56.1 Counter ¶ 31; *see also* Defs' 56.1 Counter ¶ 49. Following a relinquishment, Suffolk discontinues all efforts to seek judicial forfeiture while they attempt to resolve outstanding issues with the automobile lending company by consent, but should circumstances change, the County could, if it wished, resume its efforts to seek forfeiture. To be sure, if the County waits long enough without either returning the property or commencing a forfeiture action, the delay at some point could contravene the Due Process Clause, but the Court has already concluded that the delay was not impermissibly long here. Separately, a lengthy delay may cause statutory problems with forfeiture—such as the 180-day limit reflected in S.C. Code § 420-6(C)—but plaintiffs never raise the 180-day limit as relevant to the due process analysis and the Court does not consider this issue given that it was not raised. *See generally* Pls' Mot.; *see also* Pls'

28

Reply 25, 30 (discussing the 180-day limit only in the context of plaintiffs' Fourth Amendment claim and Suffolk's state law counterclaims for towing and storage fees).

Finally, the Court briefly notes that it does not agree that defendants have committed a due process violation by failing to "publicize" procedures that are used to deprive persons of vehicles. *See* Pls' Mot. 18. While it is true that the government must publicize the procedures that it and property owners are obliged to follow in the context of vehicle forfeiture, *see Butler v. Castro*, 896 F.2d 698, 703 (2d Cir. 1990), these procedures are described in detail in the Suffolk County Code and on the Suffolk County's public website. *See* S.C. Code §§ 420-5 to -10, 818-13 to -20; Cuthbertson Decl. Ex. 2, ECF No. 69-4. These policies are not so incomplete as to violate the Due Process Clause simply because they do not state that the County may or will attempt to negotiate a voluntary agreement in certain circumstances.

Accordingly, with respect to plaintiffs' Fourteenth Amendment claim concerning the Dodge, plaintiffs' motion for summary judgment is denied and defendants' cross-motion for summary judgment is granted.

### B.    Due Process with Respect to the RAM

To evaluate plaintiffs' due process claim with respect to the RAM, the Court again must consider "whether plaintiffs possess a . . . property interest protected by the Due Process Clause" and, if so, whether the "procedures are constitutionally adequate." *Ford Motor Credit*, 503 F.3d at 190.

To start, Santander has a protected property interest in the RAM even though it holds only a lien in the vehicle, not title. "[A] lienholder like [Santander] has a property interest in the present value of a seized vehicle subject to a lien, and the same rights as a vehicle claimant-owner to expect that a civil forfeiture action be promptly instituted and

29

then be afforded due process and an opportunity to be heard." *Santander v. Suffolk*, No. 20-cv-02656, 2021 WL 4480574, at \*6 (E.D.N.Y. Sep. 30, 2021) (quoting *Prop. Clerk v. Leon*, 960 N.Y.S.2d 341 (N.Y. Sup. Ct. 2010)); *see also Mercedes-Benz*, 770 F. Supp. 3d at 657 ("[T]he Due Process Clause protects a lienholder's property interest in a seized vehicle." (citing *Ford Motor Credit*, 503 F.3d at 191)). The County asserts that "there would be nothing to accomplish through a forfeiture proceeding" because it does "not seek to extinguish Santander's interest." *See* Defs' Mot. 23. Nevertheless, each day that the County holds the RAM and thereby deprives Santander of its property interest in the present value of the vehicle, the clock is ticking for the County to either: (a) commence a forfeiture proceeding and have Santander receive the associated notice and hearing, or (b) return the property interest to Santander.

Next, with regard to the constitutionality of the procedures, the Court must again consider the four factors under *$8,850* to evaluate the constitutionality of the period of time during which Santander has been deprived of its property interest. The first factor is "the length of the delay." *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). The RAM was seized by Suffolk incidental to a DWI arrest on March 18, 2023. Pls' 56.1 ¶ 43; Defs' 56.1 Counter ¶ 43. The RAM Customer turned over title to the vehicle to Suffolk on April 19, 2023. Pls' 56.1 ¶ 47; Defs' 56.1 Counter ¶ 47. On July 12, 2023, plaintiffs filed the instant lawsuit. Pls' 56.1 ¶ 75; Defs' 56.1 Counter ¶ 75. To date, Suffolk has neither returned the vehicle to Santander nor commenced a forfeiture proceeding against the RAM. Pls' 56.1 ¶ 49; Defs' 56.1 Counter ¶ 49. Thus the period of delay currently totals around 2 years and 11 months.

The Court notes that although the instant litigation commenced less than four months after the seizure and has been pending since, that fact does not alter the calculation

of the period of delay. Even if the instant litigation were equivalent to a forfeiture proceeding for due process purposes, the delay's endpoint is not merely when a forfeiture proceeding is commenced, but rather when a forfeiture trial is actually held. *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir. 1986) ("To require prompt filing of a forfeiture action but allow indefinite postponement of the trial would reduce the filing requirement to a nullity."); *see also United States v. All Assets Held in Raymond James & Assocs., Inc. Acct. No. XXXXXXXX in the Name of Deltora Enters. Grp. Co. Ltd. ("Deltora")*, No. 19-cv-00377, 2025 WL 3683271, at *6 (E.D.N.Y. Dec. 18, 2025) ("[T]he Government's obligation to proceed expeditiously extends beyond the filing of the forfeiture action to the commencement of trial.").

The Court finds that the length of the delay—approaching three years—weighs in plaintiffs' favor. *See $8,850*, 461 U.S. at 565, 569 (finding a period of eighteen months to be "quite significant" and "a substantial period of time").

The second factor is the reason for the delay. *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). Defendants allege that since this litigation commenced, Suffolk has "delayed selling the RAM until the parties' respective rights to the proceeds from its sale had been determined." Defs' Mot. 24. Although the government's obligation to proceed expeditiously is continuous until the commencement of trial in a forfeiture action, courts may find some periods of delay more understandable than others. For example, courts may treat time attributable to the government's delay in initiating a forfeiture action differently from time attributable to the pace of litigating the action once commenced. *See Deltora*, 2025 WL 3683271, at *6 ("[T]he Court recognizes the difference—both conceptually and mathematically—between the pre-litigation delay (approximately eighteen months) and the post-commencement-of-litigation delay (approximately forty-

31

one months). The Court considers the reasons for these delays when evaluating the second factor in the due process analysis.").

In the present case, the Court concludes that the second factor weighs in the County's favor. Of the two years and eleven months of delay, the overwhelming majority has occurred during the pendency of the instant litigation. The County's choice to maintain the status quo during this time—neither returning the vehicle to Santander, nor selling the vehicle at auction and returning proceeds to Santander, nor commencing a forfeiture proceeding—is a reasonable course of action while Suffolk waits for the Court to adjudicate the rights of the parties. Moreover, there is no allegation that Suffolk dragged its feet or otherwise took an improperly long time to litigate this case. The duration of the instant litigation is primarily attributable to discovery and summary judgment motion practice, and otherwise "attributable to the Court's schedule." *Id.* at *7 (citing *United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 716 (E.D.N.C. 2016)).

The third factor is "whether the property owner asserted [their] rights." *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). The Court finds that this factor weighs in favor of the plaintiffs. After the RAM was seized on March 18, 2023, Pls' 56.1 ¶ 43; Defs' 56.1 Counter ¶ 43, Santander informed the County on June 21, 2023 that it rejected the County's proposed terms and demanded the unconditional release of the RAM, Defs' 56.1 ¶ 24; Pls' 56.1 Counter ¶ 24; Pls' 56.1 ¶ 56; Defs' 56.1 Counter ¶ 56. Plaintiffs also filed the instant lawsuit, which could reasonably be understood as an assertion of rights. *See Compl.*

The fourth factor is "whether the delay was prejudicial." *Culley*, 601 U.S. at 386 (citing *$8,850*, 461 U.S. at 564). The Court concludes that this factor does not weigh in favor of the plaintiffs with respect to the RAM for the same reasons as for the Dodge—

plaintiffs have not identified any reason to believe that the passage of time made them less able to present a defense on the merits.

Weighing the factors as a whole, the Court finds the impoundment of the RAM to be a closer question than the impoundment of the Dodge. However, the Court holds that plaintiffs have not alleged a meritorious claim that the detention of the RAM under the circumstances violated plaintiffs' due process rights. The Court arrives at this conclusion chiefly because of the reason for the delay—awaiting resolution of the instant case—and also because plaintiffs have not articulated why the delay has prejudiced them in terms of their ability to assert their rights. Accordingly, with respect to plaintiffs' Fourteenth Amendment claim concerning the RAM, plaintiffs' motion for summary judgment is denied and defendants' cross-motion for summary judgment is granted.

III.    Fifth Amendment

Count III of plaintiffs' complaint alleges that defendants "took [p]laintiffs' interests in the RAM and [Dodge]—their right to possession of such vehicles—for a public use, namely, [Suffolk]'s enforcement of traffic safety obligations." Compl. ¶ 74. Plaintiff asserts that "[i]n depriving [p]laintiffs of [their] property in order to force disposal of vehicles according to [Suffolk's] unilateral demands, [Suffolk] has exceeded the reasonable scope of its police power authority." Compl. ¶ 75. Because Suffolk has not compensated plaintiffs, plaintiffs allege that Suffolk "therefore took [p]laintiffs' property for public use without just compensation in violation of the takings clause of the Fifth Amendment." Compl. ¶¶ 76–77.

The Court finds that plaintiffs' Fifth Amendment claim unmeritorious. The Takings Clause states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. However, civil forfeiture against property involved

33

in criminal activity is not a taking for which just compensation is required. *Bennis v. Michigan,* 516 U.S. 442, 452–53 (1996) (holding that a civil forfeiture proceeding against a car used in criminal act was not a taking); *see also United States v. Davis*, 648 F.3d 84, 97 (2d Cir. 2011) ("[I]f the government acts pursuant to a forfeiture statute, it may seize personal property without compensating the owner."). Indeed, plaintiffs concede that "[t]here is an exception to Takings Clause liability that applies when property rights are taken incident to forfeiture actions." Pls' Reply 22.

Plaintiffs attempt to get around the exception to Takings Clause liability by arguing that the "exception applied until . . . Suffolk decided not to seek judicial forfeiture." Pls' Reply 22. Even assuming that Suffolk, in fact, "decided not to seek judicial forfeiture," the Court does not agree that Suffolk's continued impoundment of the vehicle at that point became a taking. A principal reason that the County retained possession of each vehicle was to collect accrued storage fees prior to relinquishing the vehicle. These fees accrued because the vehicles had been seized as a law enforcement matter. *See* S.C. Code § 420-7(L) ("All property seized pursuant to this article is subject to reasonable and customary towing, maintenance and daily storage fees as may be established by the Suffolk County Police Commissioner. Such fees shall be payable to the seizing agent prior to the release of said property."). Courts to have considered the question widely agree that the impoundment of a vehicle due to unpaid fees does not constitute a taking under the Fifth Amendment. *See, e.g.*, *Tate v. District of Columbia*, 627 F.3d 904, 906, 909–10 (D.C. Cir. 2010) (holding that where plaintiff had "unpaid traffic fines and related fees," the "impoundment . . . of [plaintiff]'s . . . vehicle [did not] constitute a taking for a public use for which she was entitled to compensation under the Fifth Amendment's Takings Clause"); *Oko v. City of Cleveland*, No. 21-cv-02222, 2023 WL 4405270, at *13–15 (N.D. Ohio July 7, 2023); *Brite*

*Fin. Servs., LLC v. Bobby's Towing Serv., LLC*, 461 F. Supp. 3d 549, 558 (E.D. Mich. 2020). To be sure, collecting fees may or may not have been the County's sole rationale for continued impoundment, *see* Pls' 56.1 ¶¶ 36–37, 54–55; Defs' 56.1 Counter ¶¶ 36–37, 54–55 (noting that the County also sought plaintiffs' agreement to holding the County harmless, among other provisions), but the parties agree that collecting the towing and storage fees was one of Suffolk's motivations, *see* Pls' 56.1 ¶¶ 36–37, 54–55; Defs' 56.1 Counter ¶¶ 36–37, 54–55. Moreover, though the parties dispute whether Suffolk could lawfully charge towing and storage fees here, *see* Defs' Mot. 40–41 Pls' Reply 29–35; Defs' Reply 13, the Court finds that it is reasonable for the County, under the circumstances, to hold the vehicles until the fees are either paid or actually found by a neutral decisionmaker to be invalid—continuing to impound the vehicles during this time does not constitute a taking. For these reasons, even assuming that Suffolk "decided not to seek judicial forfeiture," the County did not commit a taking by continuing to detain the vehicles until the accrued fees were resolved.

Accordingly, with respect to plaintiffs' claim that defendants' impoundment of the vehicles violates the Takings Clause of the Fifth Amendment, plaintiffs' motion for summary judgment is denied and defendants' cross-motion for summary judgment is granted.

IV.    Suffolk's Counterclaims for Towing and Storage Fees

Because the Court dismisses the only claims over which it has federal question jurisdiction, it is inclined to decline to exercise supplemental jurisdiction over the County's state law counterclaims against plaintiffs for towing and storage fees. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to

exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Nonetheless, the parties will be provided with notice and an opportunity to be heard on the issue. *See Catzin v. Thank You & Good Luck Corp.*, 899 F. 3d 77, 82 (2d Cir. 2018).

Accordingly, the parties shall submit a joint letter on or before March 5, 2026 setting out their respective positions regarding whether the Court should, in its discretion, exercise supplemental jurisdiction over Suffolk's counterclaims for towing and storage fees. Plaintiffs collectively and defendants collectively are each allotted 750 words to state their position. Failure to comply with the Court's order will result in the Court *sua sponte* declining to exercise supplemental jurisdiction.

### CONCLUSION

For the foregoing reasons, with respect to plaintiff's claims, plaintiffs' motion for summary judgment is **DENIED** and defendants' cross-motion for summary judgment is **GRANTED**. With respect to Suffolk's counterclaims, the parties' motions are held in abeyance pending resolution of the Court's subject-matter jurisdiction. The parties are **ORDERED** to file a joint letter regarding Suffolk's counterclaims as directed on or before March 5, 2026.

**SO ORDERED.**

> /s/ Natasha C. Merle
> NATASHA C. MERLE
> United States District Judge

Dated:      February 19, 2026
            Brooklyn, New York